### Stone v. Board of Prison Commissioners, et al.

(Decided May 13, 1915.)

#### Appeal from Franklin Circuit Court.

1.  Officers—Wrongful Removal of—Remedy.—A public officer, for example, a guard in the penitentiary, who has been wrongfully removed from office by the Board of Commissioners, may bring a suit to restrain them from putting the order of removal into effect and to compel them by injunctive process to reinstate him.

2.  Officers—Powers of to be Exercised in Conformity with Statute.—Section 3795 of the Kentucky Statutes provides that guards and other officers at the state penitentiary shall be appointed for a term of four years and not removed except for the causes pointed out in the statute, after notice in writing, at a public hearing, and the commissioners, in making appointments and removals, must comply with this statute.

3.  Officers—Wrongful Removal of—Laches.—Where a guard at the penitentiary was wrongfully removed in 1912 and did not bring a suit for relief until 1914, his right to maintain the action, was barred by laches.

4.  Officers—Rights and Remedies of When Wrongfully Removed.—When an officer has been wrongfully removed from office and no one has been appointed to fill the vacancy caused by his removal, he may, by timely action, recover his salary for the period of his wrongful removal; but when the vacancy caused by his removal has been filled, his right to the salary ends with the appointment of a successor.

BROWN & NUCKOLS for appellant.

JAMES GARNETT, Attorney General, and ROBT. T. CALDWELL, Assistant Attorney General, for appellees.

OPINION OF THE COURT BY JUDGE CARROLL—Affirming.

For several years prior to 1912 the appellant had been employed as a guard at the Frankfort Peniten-

tiary. In December, 1912, he was removed by the Board of Prison Commissioners in charge of the penitentiary, and on December 24, 1914, brought this suit against the three members of the Board, the Warden and Jesse Arnold and Nash Adkins, guards at the penitentiary.

In his petition he averred that pursuant to the orders of the Board of Prison Commissioners, the Warden wrongfully and illegally dismissed him from office as guard, and that his removal "was not made after public, or any, hearing, upon charges preferred in writing, or otherwise, for political activity, insubordination, or dereliction of duty, or violation of rules of management of said prison, or cruelty to prisoners;" that after his removal, the defendant Jesse Arnold was assigned to take his place as guard, and thereafter the defendant Nash Adkins was assigned to perform the duties of the office and his name appears upon the roster of guards in place of the name of appellant.

It was further averred that on June 12, 1912, an act of the Legislature passed at the 1912 session became a law, and that by the terms of this act it was the duty of the Warden to appoint guards for a term of four years, subject to the approval of the Prison Commissioners; that on June 30, 1912, the Warden appointed appellant as guard for a term of four years and certified his name to the Board of Prison Commissioners for approval, and they did approve his appointment. That under this appointment he was employed and paid as guard from June 30th, 1912, until his removal in December, 1912. He further averred that his appointment and approval entitled him to the office of guard for a period of four years, and that his removal, under the circumstances heretofore stated, was illegal and void.

He prayed that it be adjudged that he be restored to his position as guard to serve the balance of his unexpired term of four years, and that the Board of Commissioners be compelled to certify to the Auditor of Public Accounts his name for payment as a guard from the time of his wrongful dismissal.

To this petition a general demurrer filed by the defendants was sustained by the lower court, and the petition of appellant dismissed.

The act of 1912, now Sec. 3795 of the Kentucky Statutes, removed from office the persons then holding the places of Prison Commissioners and put the appointment of their successors in the hands of the Governor.

It also provided that "The offices of wardens, deputy-wardens, assistant deputy-wardens, prison guards, clerks, and all other offices shall continue in existence as heretofore created, but provided that they shall be filled by appointment for a term of four years, and shall not be removed by the Commissioners except after public hearing, upon charges preferred against them, or any of them, in writing for any of the following causes, to-wit: political activity, insubordination, dereliction of duty, violation of the rules of management of said prisons, or cruelty to prisoners."

Accepting as true the averments of the petition, all of which were admitted by the demurrer, it appears that appellant had been appointed by the commissioners, who went into office under the act of 1912, as a guard for a term of four years beginning June 30, 1912, and that in December, 1912, when only six months of his four-year term had run, he was removed by the commissioners without a hearing and in the absence of any charges against him that, under the statute, authorized his removal. We may, therefore, assume that his removal was unauthorized and illegal, because the commissioners have no power to remove a guard until after he has had a public hearing upon charges preferred against him in writing, and he can then be removed only for the causes, or one of them, specified in the statute as a ground for removal. The authority of the commissioners to remove guards and the other officers mentioned in the statute, who have been appointed for a term of four years, must be exercised in the manner pointed out in the statute. The commissioners have no power to remove these appointees, or any of them, arbitrarily, or in any other manner, or for any other cause, than as provided in the statute.

It was evidently the purpose of the Legislature in the enactment of this statute to take from these commissioners the authority to summarily and without cause remove prison officers and guards who had been appointed for a term; and to prevent evasions of this statute, the act further provides that the offices mentioned "shall be filled by appointment for a term of four years." So that all these officers must be appointed for a term of four years, and when so appointed they are not subject to removal except in the manner and for the causes set forth in the statute.

Having this view of the matter, it follows that if the appellant had taken timely action, his petition stated a good cause of action and one that would have secured restoration to his office. But we think that by acquiescing for two years or more in the action of the commissioners in removing him from office, he lost by *laches* his right to the relief sought in his petition.

He was removed from office in December, 1912, and if, as he averred, he had been appointed for four years and his removal was in violation of the statute, his cause of action to obtain relief accrued at once. No excuse for the long and unreasonable delay in bringing the action is disclosed by the petition, and we take for granted that no reasonable excuse could be assigned. The rights of appellant were fixed by the statute in force when his removal took place and which remains unchanged. He knew what they were in December, 1912, but, knowing them, he voluntarily chose to delay bringing this suit to assert them for two years or more.

It appears from the petition that immediately upon the removal of appellant his place was filled by other guards, who continually, from the time of his removal until the institution of this action, performed the duties of the office from which he had been removed, and received the compensation provided therefor by law. It is not so averred, but we may reasonably assume that from the time of the removal of appellant up to the institution of the suit, he was engaged, or, at any rate, could have been, in some other employment. Under these circumstances, if appellant should be afforded the relief he now seeks, the State would be burdened with the salary of two persons when only one was engaged in rendering any service to the State. And obviously the appellant should not be permitted to put upon the State this entirely unnecessary expense. In suits of this character, where the public interest and the public money is involved, it is indispensable that a party must seek relief when his cause of action accrues, or within a reasonable time thereafter, considering the circumstances and nature of the case, or else he will have no standing in court.

It would be difficult to state a case calling more urgently for the application of the doctrine of *laches* than this one. To now restore the appellant to the office from which he was wrongfully removed, more than two

years ago, and which office has been continuously filled
by some other person since his removal, would not only
be in some measure detrimental to the public good, but
would work an injustice to the person who is filling the
place of appellant and who had a right to assume that
appellant, by his delay and acquiescence in the action of
the commissioners, had abandoned his claim of right to
the office. To give him the salary sought would neces-
sarily take out of the State Treasury money for which
the State has received no equivalent of any character
and put upon the people of the State the burden of com-
pensating the appellant for services that he did not per-
form.

Nor do we find any substantial ground on which to
rest the argument that appellant should have compen-
sation for at least the time it would have taken to adju-
dicate his rights, if he had brought suit immediately upon
his removal. It would, of course, be impossible to fix,
with any reasonable certainty, the time in which his
rights could have been judicially determined if suit had
been brought within a seasonable time, and there is no
reason in a case like this why courts should be required
to speculate upon the compensation to which a person in
the situation of appellant is entitled.

If a suit for the purpose of restraining the commis-
sioners from putting into effect the order of his re-
moval, or for the purpose of compelling them, by injunc-
tive process, to reinstate him, had been brought at once,
it seems entirely probable that within a few days there-
after there might have been such an adjudication of the
matter in controversy as would have determined the
right of the appellant to the relief sought, and the delay
incident to such a suit would have caused slight incon-
venience to any of the interested parties, and have
worked little harm to the State. It is, of course, pos-
sible that the litigation might not have been so speedily
disposed of; but, however, this may be, it is, we think,
quite certain that the appellant, under the circumstances
stated in his petition, is not entitled to any relief, and
this solely because his action was not brought in time.
We think the petition stated a good cause of action, for
timely relief, but it also states facts showing conclusively
that the right to maintain it has been barred by *laches.*

In Gorley v. City of Louisville, 108 Ky., 798, it ap-
pears that Gorley, who was wrongfully removed from
the police force, brought a suit to recover his salary.

It further appears from the opinion that after his removal no one was appointed in his place, and because of this fact the court held that he should have so much of the salary as would likely have accrued pending a prompt judicial settlement of his rights; but it was also said: "It does not follow, however, that one so situated may remain passive as appellant did for about one year, and even earn money from other sources, and then sue for his accumulated salary. He must assert his right to the office and his salary promptly, to the end that upon his restoration to the office, if that should follow a favorable decision, he may perform the duties for which he is to be paid, or the city take such steps as she may legally do to avoid further loss. This is but common justice to the city. Upon being refused his salary appellant ought then to have brought this action." If, however, some person had been immediately appointed—as was done in the case we have—to perform the duties of the office from which Gorley had been removed, he would not have been entitled to his salary. This is, we think, made plain by the opinion in City of Louisville v. Ross, 138 Ky., 764.

In that case Ross was wrongfully removed from office as policeman in the city of Louisville on January 6, 1908. In June, 1908, he brought suit to recover the salary due him as a policeman. In the course of the opinion the court said: "When Ross was discharged the roster was not full, and, therefore, it could not be said that any one of the men held his place, because, after counting every one of the men on the force, there was still room left for Ross, and the stipulations of counsel show that nobody was appointed to take the place made vacant by the discharge of appellee. This being true, the case readily falls within the principles announced in Gorley v. City of Louisville, that there was nobody for Ross to sue, and the city is therefore bound to pay him for the time he was illegally discharged."

In Dolan v. City of Louisville, 142 Ky., 818, Dolan, who was wrongfully removed from the office of policeman, brought suit about a year after his removal to recover the salary during the time of his removal. As said in the opinion, "The lower court dismissed appellant's petition, however, because there was no testimony showing that there was a vacant place on the police force during the year for which he sues for his salary.

The lower court determined that it was the duty of appellant to establish his title to the office against the person succeeding him therein, or to show that the office remained vacant during the year and that the salary was not paid to any other person, or to have instituted proceedings against the Board of Public Safety to be reinstated in the office." And this ruling of the lower court was affirmed.

In Kammerer v. City of Louisville, 142 Ky., 848, Kammerer, who was dismissed from the police force, brought suit to recover his salary from the date of the dismissal to the date of the action. The lower court held that Kammerer was entitled to his salary during the time there was a vacancy in the police force caused by his dismissal, but that from the time the police force became full Kammerer's right to recover his salary ceased and determined until such time as he established his title to the office in a direct action brought for that purpose.

The rule announced in these cases is that when an officer has been wrongfully removed from office, and no one has been appointed to fill the vacancy caused by his removal, or to perform with compensation the duties of the office from which he was removed, he may by timely action recover his salary during the period covered by his wrongful removal, but when the vacancy caused by his removal has been filled, or some other person has been appointed with compensation to perform the duties of the office from which he was removed, his right to the salary in an action against the city or State ends with the appointment of his successor.

Applying this rule to the case we have, it is shown, as stated by the petition, that immediately upon the removal of appellant another person was appointed to fill the vacancy caused by his removal, or at least to perform with compensation the duties of the office from which appellant had been removed; so that the appellant is not entitled to compensation in this action for any time, and, therefore, the judgment of the lower court dismissing his petition is affirmed.